UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANN T.,[1]

                                                       Plaintiff,                      Case # 20-CV-443-FPG

v.                                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                     Defendant.
_____

## INTRODUCTION

Plaintiff Joann T. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 18. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

In February 2013, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 143-48. She alleged disability since January 2012 due to rheumatoid arthritis, fibromyalgia, a heart problem, and depression. Tr. 81, 228. In January 2015, Administrative Law

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 9, 10, 11.

1

Judge David S. Lewandowski issued a decision finding that Plaintiff is not disabled.  Tr. 16-34.  In September 2016, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff sought review in District Court and secured a judgment in her favor in September 2018.  Tr. 807-17.

On November 15, 2019, a new hearing was held before Administrative Law Judge Stephan Bell ("the ALJ").  Tr. 727-66.  The ALJ issued a decision in December 2019 finding that Plaintiff is not disabled.  Tr. 700-26.  This action seeks review of that decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 17, 2013, her application date. Tr. 705. At Step Two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, fibromyalgia, chronic pain syndrome, avascular necrosis and lateral tibial plateau problems, peripheral vascular disease, and obesity. *Id.* at 706. At Step Three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.* a 708-09.

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work with additional limitations. *Id.* at 709-17. At Step Four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 717. At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 718-19. The ALJ therefore found that Plaintiff was not disabled. *Id.* at 719.

### II. Analysis[3]

A claimant's RFC reflects what she "can still do despite [her] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting

---

[3] Plaintiff's claim was filed on February 2, 2013. Therefore, the amendment to the regulations that applies to claims filed after March 27, 2017, does not apply to this case. *See Raymond M. v. Commissioner*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) ("The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.").

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  ALJs "weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

Here, the ALJ found that Plaintiff had the RFC to perform "sedentary work"[4] with the following additional limitations:

> [E]xcept lifting 10 pounds occasionally and less than 10 pounds frequently; carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for 6-hours, standing for 2-hours, and walking for 2-hours; pushing and/or pulling as much as can lift and/or carry; can reach frequently to the left, and to the right; can handle and finger items frequently with the left hand, and with the right hand; can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally; stoop occasionally, kneel less than occasional; crouch less than occasional; crawl less than occasional; can work at unprotected heights occasionally; around moving mechanical parts occasionally; operate a motor vehicle occasionally; and can work in vibration occasionally.

Tr. 709.

Plaintiff argues that remand is warranted because the ALJ's ultimate RFC finding that Plaintiff is capable of a restricted degree of sedentary work was not supported by substantial evidence.  More specifically, Plaintiff takes issue, *inter alia*, with the ALJ's analysis of the opinion of Plaintiff's treating nurse practitioner, Leslie M. Bixby, FNP-BC ("NP Bixby").  Because this Court agrees that remand is required under this argument, it does not address Plaintiff's other arguments.

"Nurse practitioners are considered non-acceptable medical sources."  *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (citing SSR 06–3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006)).  Nonetheless, the opinions of nurse practitioners and other non-acceptable medical sources "may be used to show the severity of the individual's impairment(s) and how it affects the

---

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 416.967(a).

individual's ability to function." *Id.* (internal quotation marks omitted). "SSR 06–03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would be used to analyze the opinion of an acceptable medical source." *Id.* Those factors are as follows:

> (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion.

*Id.*

"[A]lthough a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to 'some extra consideration,' when the nurse practitioner has a treating relationship with the patient." *Beckers*, 38 F. Supp. at 371 (citing *Monguer v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)). In accordance with the factors above, under SSR 06–03p, the ALJ "generally should explain the weight given to opinions from these [non-acceptable sources], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* "The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Allen v. Comm'r*, 351 F. Supp. 3d 327, 336 (W.D.N.Y. 2018).

In analyzing NP Bixby's opinion, the ALJ noted that NP Bixby found Plaintiff was restricted to "a very compromised range of sedentary work with disabling limitations including inability to complete the sitting, standing and walking requirements of an 8-hour workday and missing more than 4-days a month from work." Tr. 716. The ALJ found this opinion to be

"inconsistent with the evidence as a whole," and inconsistent with other opinion evidence in the record—"particularly Dr. Dave"—a consultative examiner. *Id.* The ALJ also noted that NP Bixby's conclusion as to Plaintiff's abilities was based on findings such as "pain, tenderness, achiness, and fatigue when such factors are beyond this source's expertise and merely subjective assertions by the claimant." *Id.* Finally, the ALJ took exception to the fact that NP Bixby "accorded the [Plaintiff] limitations due to depression and anxiety when the same are non-severe." *Id.*

The ALJ's analysis of NP Bixby's opinion is problematic. First, the ALJ failed to specifically state what weight he assigned to NP Bixby's opinion. *See* Tr. 716. While an ALJ need not necessarily state the weight given to the opinion of a "non-acceptable" source such as NP Bixby, he is still obligated to "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6. Here, the ALJ failed in meeting that obligation.

The ALJ failed to discuss portions of NP Bixby's opinion without providing an explanation for failing to do so. For example, he did not discuss NP Bixby's opinions regarding Plaintiff's ability to use her hands/fingers/arms for activities such as grasping, turning, and twisting objects; nor did he discuss NP Bixby's findings related to overhead reaching limitations. Tr. 716, 2949. Furthermore, the ALJ did not discuss NP Bixby's opinion that Plaintiff would be "off task" ("that is, either unable to perform work and/or away from the work environment due to [her] limitations") more than 30% of the time. Tr. 716, 2947. These portions of NP Bixby's opinion bear on Plaintiff's ability to perform the limited range of sedentary work the ALJ ascribed to Plaintiff— and thus would have an effect on the outcome of this case.

7

Second, there is no indication that the length and frequency of Plaintiff's treating relationship with NP Bixby entered the ALJ's calculus in any manner—as it should under the law. *See Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (citing *Mongeur*, 722 F.2d at 1039 n. 2) ("[A]lthough a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to 'some extra consideration,' when the nurse practitioner has a treating relationship with the patient.") (additional citation omitted).  Plaintiff has treated with NP Bixby "monthly (approximately) since Nov. 2012." Tr. 2946.  Indeed, prior to rendering her opinion, NP Bixby had seen Plaintiff for treatment 24 times. ECF No. 15-1 at 20. Yet the ALJ's decision lacks any discussion of this factor and fails to account for whether "the ALJ considered [it] when deciding to afford more weight to . . . the consultative physician report from Dr. [Dave] as opposed to" NP Bixby's opinion. *See Hernandez v. Astrue*, 814 F. Supp. 2d 168, 188 (E.D.N.Y. 2019).

To be sure, "the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions." *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 565 (W.D.N.Y. 2018) (citation & internal quotation marks omitted).  On remand, the ALJ is directed to clearly delineate which portions of NP Bixby's opinions will be incorporated into his RFC finding, and which will not be included.  To the extent that the ALJ does not include portions of NP Bixby's opinion, the ALJ is directed to explain, in accordance with SSR 06–03p, why the opinion was not afforded more significant weight.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 15, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 18, is DENIED, and the matter is REMANDED to the Commissioner for further administrative

8

proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

    IT IS SO ORDERED.

Dated: September 9, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York